HEMISPHERE TOUR & TRAVEL,
SOUTH, INC., Plaintiff–
Appellant,

v.

B.T. BONES, Branson Steakhouse,
Inc., Defendant–Respondent.

No. 22119.

Missouri Court of Appeals,
Southern District,
Division Two.

Sept. 25, 1998.

Motion for Rehearing and Transfer
Denied Oct. 8, 1998.

Application for Transfer Denied
Nov. 24, 1998.

Matthew F. Trokey, Cantwell, Smith & Trokey, L.L.P., Branson, for Appellant.

Greggory D. Groves, Lowther, Johnson, Joyner, Lowther, Cully & Housley, L.L.C., Springfield,for Appellee.

BARNEY, Judge.

Hemisphere Tour & Travel, South, Inc. (Hemisphere) appeals from a summary judgment and order dissolving a preliminary in-

---

junction entered by the trial court in favor of B.T. Bones, Branson Steakhouse, Inc. (Bones).

This action was brought by Hemisphere to enforce a lease agreement it entered into with Bones.[1] Hemisphere sought injunctive relief: (1) to preclude Bones from denying Hemisphere access to the premises in order to carry on its business; and (2) to restrain Bones from allowing Hemisphere's competitor to operate on the premises.

Bones filed a motion for summary judgment on Hemisphere's petition. Bones contended that it was entitled to judgment as a matter of law because Hemisphere assigned the subject lease to a third party, Resort Marketing, Inc., and was thus no longer a real party in interest to the lease agreement and had no standing to bring its litigation.

The trial court found that no genuine issue of material fact existed and that Hemisphere "is not the real party in interest in the subject 'lease' agreement and in this action...."

"In considering an appeal from the entry of a summary judgment, an appellate court reviews the record in the light most favorable to the party against whom the judgment was entered." *Allison v. Agribank, FCB,* 949 S.W.2d 182, 187 (Mo.App.1997). "The review is essentially *de novo* with the appellate court employing the same tests as should be employed by the trial court in deciding whether to grant the motion." *Id.* "Summary judgment is granted only where no genuine issue of material fact exists, and judgment is proper as a matter of law." *Id.;* see also Rule 74.04(c)(3), Missouri Court Rules (1998).

"A genuine issue of material fact exists where the record contains competent evidence that two plausible but contradictory accounts of essential facts exist." *Allison,* 949 S.W.2d at 187. "The key to summary judgment is the undisputed right to judg-

ment as a matter of law; not simply the absence of a fact question." *Id.*

■ Hemisphere assigns one point of error. It avers that the trial court erred in entering summary judgment in favor of Bones because there was a genuine issue of material fact as to whether Hemisphere "was the real party in interest to both the lease agreement and the underlying litigation." Hemisphere maintains that the lease agreement between it and Bones had not been assigned to a third party because the parties to the alleged assignment never intended to effectuate an assignment of the subject lease agreement without Bones' written consent.

■ Rule 52.01, Missouri Court Rules (1998), provides that "[e]very civil action shall be prosecuted in the name of the real party in interest...." "[T]he general rule is that an absolute assignment of an entire right or interest works a divestiture of all right or interest of the assignor therein and for purposes of maintaining a civil action thereon the assignee becomes the real party in interest." *C & M Developers, Inc. v. Berbiglia, Inc.,* 585 S.W.2d 176, 181 (Mo.App. 1979). However, "[t]he operation and effect of an assignment may be limited by exceptions, reservations, conditions, or restrictions contained therein, so long as they do not violate statutory provisions or general rules of policy." *Silliman v. Chrisman,* 584 S.W.2d 441, 447 (Mo.App.1979).

Attached to the motion for summary judgment were various exhibits that Bones contended were evidence that Hemisphere assigned the subject lease to a third party thereby showing that Hemisphere was no longer a real party in interest to the lease agreement or the underlying litigation.

The first exhibit was a "Bill of Sale" between Hemisphere and Resort Marketing International, Inc., dated August 12, 1997. The document was executed by Hemisphere's

---

1. The lease agreement between Hemisphere and Bones was drafted in the form of a letter, dated September 20, 1996, on "Hemisphere Tour & Travel, South" letterhead. The letter outlines the various terms of the lease including the duration of the lease, which was for the "calender years" 1997 and 1998. The purpose of the lease was

described as "to allow Hemisphere to occupy a space at the entrance to the restaurant with the exclusive right to offer tourist information, sell theater and attraction tickets as well as offer free promotional giveaways in exchange for touring various resorts and campgrounds in the Branson area."

president and was notarized. It provided, *inter alia,* the following:

> For Ten Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the undersigned **HEMISPHERE TOUR & TRAVEL SOUTH, INC.**, a Florida corporation (herein "Seller"), hereby sells, conveys, transfers and assigns to **RESORT MARKETING INTERNATIONAL, INC.**, a California corporation (herein "Purchaser"), and its successors and assigns all of the tangible and intangible assets of Seller used as a going concern, including but not limited to: ... (iii) all leases, contracts, warranties, licenses, permits and related agreements (including, but not limited to, those on *Exhibit "C"* attached hereto and made part hereof) *subject to the requested consents of landlords and licensors which have been requested but not received as described on Exhibit "C"....*

(emphasis added). Exhibit "C," also attached to Bones's motion for summary judgment, provides:

### EXHIBIT "C"

*SCHEDULE OF LEASES, CONTRACTS, WARRANTIES, LICENSES, PERMITS AND RELATED AGREEMENTS*

THE LEASES CONTRACTS, WARRANTIES, LICENSES, PERMITS AND RELATED AGREEMENTS WILL BE TRANSFERRED SUBJECT TO DAILEY PRORATION OF RENTS, UTILITIES, TAXES, INSURANCE AND ALL OTHER ITEMS OF INCOME OR EXPENSE, AT CLOSING.

### BRANSON

*TOUR PROMOTION LOCATIONS*

7.  * Letter Agreement dated 09/21/97 by and between HEMISPHERE TOUR & TRAVEL, SOUTH and BT BONES.

 * *The marked leases and licenses require landlord or licensor consent to assignment and such consent has not been received as of August 12, 1997.*

2. "A condition precedent is an act or event that

(emphasis added). Also attached to the motion for summary judgment filed by Bones was an "Assignment of Lease," dated August 12, 1997. The document was executed by the president and secretary of Hemisphere Tour & Travel South, Inc., and by the vice president of Resort Marketing International, Inc. This document provided, in part:

### ASSIGNMENT OF LEASE

THIS ASSIGNMENT OF LEASE ("Assignment") is made this *12th* day of August, 1997, by and between **HEMISPHERE TOUR & TRAVEL SOUTH, INC.**, a Florida corporation ("Assignor"), and **RESORT MARKETING INTERNATIONAL, INC.**, a California corporation ("Assignee").

### W I T N E S S E T H

WHEREAS, Assignor is the lessee or tenant under that certain Lease between Hemisphere Tour & Travel, South, Inc. ("Lessee") and B.T. Bones ("Lessor") dated September 20, 1996, (the "Lease"), a true and correct copy of which Lease and all amendments and modifications thereto are attached hereto as *Exhibit "A"* and by this reference made a part hereof; and

WHEREAS, Assignee has on even date herewith acquired substantially all the assets of Assignor, including, without limitation, all of Assignor's rights under the lease.

\* \* \*

> g.  *The Lease does require the consent of the lessor/landlord to this Assignment, and such written consent has not been obtained....*

(emphasis added).

In its brief, Hemisphere maintains that consent from Bones of its assignment of the subject lease to Resort Marketing International was a condition precedent to the operation of the assignment documents and because such consent to the assignment from Bones was never obtained, the assignment did not become operative.[2]

must be performed or occur, after the contract

In Missouri, "[n]o tenant for a term not exceeding two years, or at will, or by sufferance, shall assign or transfer his term or interest, or any part thereof, to another without the written assent of the landlord...." § 441.030, RSMo 1994. On the other hand, a lease agreement that exceeds two years in duration may be assigned by a tenant without the landlord's consent, absent language to the contrary contained within the lease agreement. *See Crestwood Plaza, Inc. v. Kroger Co.,* 520 S.W.2d 93, 96 (Mo.App. 1974); *Bibler v. Iuchs,* 220 Mo.App. 736, 275 S.W. 779, 782 (Mo.App.1925). Here, as best as can be gleaned from the original "lease agreement" contained in the Legal File, the term of the lease agreement between Hemisphere and Bones did not exceed two years. *See* note 1, *supra.* Thus, pursuant to section 441.030, written consent from Bones was necessary for Hemisphere to assign the subject lease agreement to a third party. The italicized language quoted above from the various exhibits attached to the motion for summary judgment filed by Bones appears to support Hemisphere's contentions. Hemisphere made the written consent of Bones a condition precedent to the operation of the assignment of the subject lease agreement to Resort Marketing International.

This Court has carefully reviewed the entire record in this matter. We find nothing in the record to indicate that Bones consented to the assignment of the subject lease agreement. Nor does Bones aver in its brief that it ever acquiesced to the assignment of the subject lease agreement. Indeed, during oral argument, counsel for Bones conceded that Bones did not consent to Hemisphere's assignment of the subject lease.

Hemisphere's assignment of the subject lease agreement failed to take effect because the condition precedent of "consent" to the assignment of the lease was never given to Hemisphere by Bones. *See Morgan,* 947 S.W.2d at 840; *Silliman,* 584 S.W.2d at 447. Because the trial court based its decision to grant summary judgment to Bones on the theory that Hemisphere assigned the lease

agreement to a third party, the trial court erred in granting summary judgment to Bones as a matter of law. *See* Rule 74.04(c)(3), Missouri Court Rules (1998); *Allison,* 949 S.W.2d at 187. Hemisphere remains a real party in interest to the lease agreement with Bones and the underlying litigation. Point granted.

The summary judgment is reversed, and the preliminary injunction issued by the trial court on September 3, 1997, is reinstated.

GARRISON, C.J. and MONTGOMERY, J., concur.

---

has been formed, before the contract becomes effective." *Morgan v. City of Rolla,* 947 S.W.2d 837, 840 (Mo.App.1997).